IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-72 |
| | ) | (VARLAN/SHIRLEY) |
| MARCUS FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF DETENTION PENDING TRIAL

This case came before the Court on August 1, 2005 for a detention hearing pursuant to 18 U.S.C. 3142(f). Assistant United States Attorney Tracee Plowell appeared on behalf of the government. Attorney Raymond A. Shirley represented the defendant, who was also present. The government sought the defendant's detention pretrial, arguing that there were no conditions of release that would reasonably assure the defendant's appearance before the Court or the safety of the community. The defendant sought release on conditions including electronic monitoring and residing with his paternal grandparents.

The defendant is charged [Doc. 1] with conspiracy to possess with intend to distribute crack cocaine, ten counts of possession of crack cocaine with intent to distribute, and one count of use of a firearm in furtherance of a drug trafficking crime. At the detention hearing, the government contended that the defendant should be presumed to be both a danger to others and a risk of flight due to the nature of the crimes with which he is charged. See 18 U.S.C. § 3142(e). The government proceeded by proffer, stating that this case arose out of a series of undercover purchases of narcotics from the defendant in his home. On one occasion, the defendant had a gun tucked into the waistband of his pants during the drug transaction. A search

1

of the defendant's house revealed four guns and over four grams of crack cocaine. The government contended that the investigation of the defendant involved the use of confidential informants and an undercover officer, whose identities were now known to the defendant. The government argued that in addition to the inherent dangerousness of the drug crimes with which he is charged, the defendant's release presented a risk of retaliation against these individuals in particular. Although the defendant has no prior criminal history, he has a record of failing to abide by court orders in that he has failed to pay his child support. Finally, the government contended that the defendant presented a risk of flight based upon his having lived throughout Tennessee and his lack of employment, property ownership, or any other ties to the community other than his family.

The defendant proffered that he had lived in Knox County all of his life except for a short time during which he had lived in Jefferson City. He said he has extensive ties to the community in his family and, especially, in his son. He said that he was unemployed because an injury prevented him from performing construction work.

The defendant presented the testimony of his paternal grandmother, Louise Raines. Mrs. Raines testified that she had lived in Powell, Tennessee for thirty years with her husband. She stated that both she and Mr. Raines are eighty-two years old. She said that Mr. Raines had worked for the City of Knoxville and that she had worked for twenty-six years as an instrument technician at Fort Sanders Hospital, assembling instrument packets. She said the defendant visited her frequently while growing up and that he lived with her at one point while attending high school at Karnes. She stated that while living with her, the defendant helped with the chores and followed her rules. She recalled one occasion that she had to speak with the defendant about the rules of when to come in and said that if talking with the defendant had not

2

been effective, she would have called the defendant's father, her son. She told the Court that she was willing to supervise the defendant and that if he failed to abide by the rules, she would report him. She said that her husband had a shotgun but that they were willing to remove it if the defendant came to live with them.

On cross-examination, Mrs. Raines testified that the defendant formerly came to her house with his friends when he was younger but that he had not brought his friends to visit her more recently. She said that she knew the charges against the defendant involved something about drugs and that a search of the defendant's home revealed crack cocaine and four guns. She was not aware that the defendant's child had been in the house during a drug transaction or that the defendant had confessed to the crimes. She said that she only called the defendant's father once while the defendant was living with her and that call was to encourage the defendant's father to move the defendant from the country because he missed his friends.

The government called Lieutenant Gary Price of the Knoxville Police Department in rebuttal. Lt. Price testified that he supervised the undercover investigation into the defendant's drug activity. He said that the drug transactions involving the defendant began on April 13, 2005; extended through July 18, 2005; and involved the use of confidential informants and undercover officers. He said that on July 21, 2005, a search warrant was executed on the defendant's home and that the searching officers discovered a revolver, three pistols, 5.7 grams of crack cocaine, one gram of marijuana, and ammunition. He said that two of the guns were found in the living room and had rounds in the magazine. At the time of the search, three children–the defendant's three-year-old son, a seven-year-old male, and a ten-year-old female–were at the home. He also stated that the defendant's son had been present for five of the ten undercover drug transactions. The defendant's father had been present for two of the

3

transactions.

Lt. Price testified that although the defendant had no outstanding warrants, the defendant had warrants for evading court orders as a juvenile. He said that the defendant had been interviewed by the FBI and had given statements regarding the drugs and guns found in his home. The defendant recalled selling drugs to the undercover officer and said that he received two "8-balls" of crack daily from his source. With regard to the weapons, the defendant said that he had found the .22, which was discovered in the living room, in an alley and had never shot it. The defendant said that his father had left the revolver, which was found in a bedroom, a couple of weeks ago. He said that he had bought the 9 millimeter, which was found in the bedroom, from his cousin, who had fired it. He said he had bought the glock from someone named Larry and that he had fired it when he purchased it. The defendant said that the glock occasionally jammed. The defendant reported that he had health problems and that he sold crack in order to provide for his son. The defendant also said that he had the weapons because of a prior attempt to rob him.

On cross-examination, Lt. Price testified that on April 25, 2005, the defendant had been carrying the .22 in his waistband when the undercover officer purchased drugs. Lt. Price admitted that the .22 was missing the firing pin and was not functional. He said that the glock was found in the living room on top of the entertainment center.

The government argued that the defendant was presumed to be a risk of flight and a danger to the community because of his narcotics charges and because he was facing a maximum potential life sentence for his gun offense. It argued that the defendant also presented a specific risk of danger to the undercover officer and confidential informants used in this case. It noted that the defendant sold drugs in front of his father and in front of children. The

4

government argued that the defendant's grandmother, who had offered to let the defendant live with her, seemed surprised about the charges and had not had much experience with the defendant after he had gotten older. The government also asked the Court to consider the defendant's Pretrial Services Report.

The defendant argued that his risk of flight is very low because he has extensive ties to the community and his entire family lives here. Arguing that the only real issue in this case is the risk of danger, the defendant contended that his proposed conditions, including living with his grandmother, would alleviate any danger. He said that he would be removed from the East Knoxville area to the country and that his grandmother would report him to the Marshals if he violated the conditions of his release. He also offered to submit to a curfew and electronic monitoring. He argued that the implementation of these conditions would prevent any risk to the informants or the undercover officer.

Following a detention hearing, a defendant may be detained pending trial if there is no condition or combination of conditions that will reasonably assure (1) the defendant's appearance as required in court and (2) the safety of the community or any person in it. 18 U.S.C. § 3142(e). The Court finds that the instant case qualifies for the statutory rebuttable presumption that there is no condition or combination of conditions that will reasonably assure the defendant's appearance or the safety of the community. See 18 U.S.C. 3142(e). In this respect, the Court finds probable cause, in the form of the indictment, to believe that the defendant has committed an offense under the Controlled Substances Act and/or 18 U.S.C. § 924(c) for which he faces a maximum sentence of ten years or more. See United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption).

5

In light of the parties' proffers, the witnesses' testimony, and the Pretrial Services Report, the Court also finds that the defendant has not overcome the presumption that there are no conditions of release that could reasonably assure the safety of the community. In making this determination, the Court has considered the factors enumerated in 18 U.S.C. § 3142(g). Factor one looks to the nature and circumstances of the offense charged, including whether it is a violation of the Controlled Substances Act for which the defendant faces a maximum sentence of ten years or more. See 18 U.S.C. § 3142(g)(1)(C). In the present case, the defendant is charged with multiple qualifying offenses. This factor weights in favor of detention.

Second, the Court finds that factor two, the weight of the evidence against the defendant, to argue for detention in this case because Lt. Price testified that the defendant had confessed to selling drugs to the undercover officer. See 18 U.S.C. § 3142(g)(2). The third factor for the Court to consider examines the history and characteristics of the defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The Court finds that with the exception of employment, financial resources, and drug use, these factors argue in favor of the defendant's release. This positive history is tempered by the fact that the defendant admitted to using marijuana daily and has tested positive for drugs upon his arrest on the present charges. The Court also finds that the defendant was not on probation, parole, or pretrial release at the time of the current offenses, a factor which weighs in favor of release. See 18 U.S.C. § 3142(g)(3)(B).

Finally, with respect to the "nature and seriousness of the danger to any person or the community that would be posed by the person's release," the Court finds that this factor also

6

weighs in favor of detention. See 18 U.S.C. § 3142(g)(4). The Court finds the use and sale of drugs to establish a significant danger. The addition of guns to the equation only increases that danger. Finally, the involvement of confidential informants and an undercover officer in the drug transactions only serves to personalize and escalate this very serious danger.

The Court notes that the defendant has offered his grandmother as his custodian if he is released. The Court finds her to be a good person and a good example and that she arguably could assure his appearance for court. The Court also finds that all of the factors that were positive for the defendant with regard to his history and characteristics relate to his risk of flight. Thus, the Court finds that the defendant has rebutted the presumption that he is a risk of flight.

However, the Court finds that the factors that weigh against release (the nature of the offenses, the weight of the evidence, the defendant's drug use, and the nature and seriousness of the danger) go to the defendant's dangerousness to the community. In this respect, the Court notes that the defendant's grandmother seemed surprised by the details of his charges. The Court doubts her ability to control the defendant in the present or future, despite her best intentions. Accordingly, the Court finds that the evidence presented by the defendant is insufficient to rebut the presumption that he is a danger to the community. Moreover, even without the presumption, the Court finds clear and convincing evidence that the defendant is a danger to the community and to specific individuals such as the undercover officer and the confidential informants. The fact that the evidence indicates that the defendant is a drug user as well as a dealer presents special risks. The presence of guns, particularly on his person, only intensifies that risk. The Court finds that there are no conditions that would alleviate this danger. All the information on the drug sales with which the defendant is charged indicates that the

7

buyers came to the defendant. The Court finds that the defendant could resume his drug sales even if living with his grandmother and on electronic monitoring.

Accordingly, the Court concludes that no condition or combination of conditions of release exist that could reasonably assure the safety of the community. Therefore, the defendant is **ORDERED** to remain in detention until his trial. The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultations with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge